# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-1895
_____

EDWARD A. CRAPO, in his
capacity as Alachua County
Property Appraiser,

     Appellant/Cross-Appellee,

     v.

ACADEMY FOR FIVE ELEMENT
ACUPUNCTURE, INC., a Florida
Non-Profit Corporation,

     Appellee/Cross-Appellant.

_____

On appeal from the Circuit Court for Alachua County.
Toby S. Monaco, Judge.

July 8, 2019

ON REHEARING EN BANC

PER CURIAM.

Alachua County Property Appraiser Edward A. Crapo appeals a circuit court decision awarding the Academy for Five Element Acupuncture, Inc. an educational property tax exemption under section 196.198, Florida Statutes. On the merits, Property Appraiser Crapo argues that the Academy does not qualify for the exemption because it is not an "educational institution" as defined in section 196.012(5)—and we agree. Procedurally, the Academy

raises a tipsy-coachman argument[1] urging us to affirm the circuit court's ruling because an earlier Value Adjustment Board decision favoring the Academy was preclusive under the administrative finality doctrine—but we disagree. We therefore reverse the circuit court's judgment.

## I. Facts

The Academy operates a not-for-profit private post-secondary school in downtown Gainesville that teaches and trains students in acupuncture, health sciences, and herbal studies. For years, while located in Broward County, the Academy received an educational tax exemption on its property. But when it moved to Gainesville in 2008 and applied for the same exemption, Property Appraiser Crapo denied it. He asserted that the Academy was not an "educational institution" under the tax code and did not qualify for the property tax exemption. The Academy petitioned the Alachua County VAB to resolve the dispute, and a special magistrate heard the case. The special magistrate concluded, with substantial hesitation, that the Academy qualified as an educational institution under section 196.012(5), and recommended that the VAB grant the exemption. The VAB did so, summarily granting the Academy's property tax exemption. Property Appraiser Crapo did not seek the de-novo hearing in circuit court authorized under section 194.036(3), Florida Statutes.

The Academy received the educational exemption on its Alachua County property from 2008 through 2013. In 2014, Property Appraiser Crapo again raised the education exemption issue. He issued a notice to the Academy disapproving its exemption for failing to meet the definition of an educational institution. The Academy responded by again petitioning the VAB. The VAB upheld the tax exemption, the same result as in 2008. This time, however, Property Appraiser Crapo filed suit in circuit court for de-novo determination of the issue. *See* § 194.036(3), Fla.

---

[1] The "tipsy coachman" doctrine allows an appellate court to affirm a trial court that "reaches the right result, but for the wrong reasons" so long as "there is any basis which would support the judgment in the record." *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999).

Stat. The circuit court ruled that the Academy qualified for the exemption.

In addition to deciding the tax exemption issue, the circuit court considered the Academy's alternative administrative-finality argument. The Academy argued that Property Appraiser Crapo was prohibited from litigating the tax exemption issue because the underlying facts had not changed, and he lost the same issue before the VAB in 2008. But the circuit court rejected the Academy's decisional-finality argument under the theory that each tax year stands on its own.

Property Appraiser Crapo then appealed the property tax exemption issue to this Court, and the Academy cross-appealed on the administrative-finality issue. A three-judge panel affirmed the trial court's final judgment for the Academy based on administrative finality, holding that Property Appraiser Crapo could not revisit or challenge the Academy's tax exemption any more after the VAB's 2008 decision. The panel opinion did not reach the merits of Property Appraiser Crapo's argument against the Academy's tax exemption. Property Appraiser Crapo then filed a motion for rehearing en banc, which we granted. *See* Fla. R. App. P. 9.331(d).

II. Merits: The Exemption

Real property in Florida is annually assessed and subject to an ad valorem tax unless an exemption applies. Art. VII, § 4, Fla. Const.; §§ 192.042, 196.001(1), Fla. Stat.; *see also Sowell v. Panama Commons, L.P.*, 192 So. 3d 27, 30 (Fla. 2016). One of the available exemptions under Florida law applies to property used for educational purposes by an "educational institution." § 196.198, Fla. Stat.; *see also* Art. VII, § 3(a), Fla. Const. (allowing for exemptions on property used for educational purposes); *Nat'l Ctr. for Constr. Educ. & Research Ltd., Corp. v. Crapo*, 248 So. 3d 1256, 1257-58 (Fla. 1st DCA 2018). The tax code further defines an "educational institution" as follows:

> "Educational institution" means a federal, state, parochial, church, or private school, college, or university conducting regular classes and courses of study required

3

for eligibility to certification by, accreditation to, or membership in *the State Department of Education of Florida, Southern Association of Colleges and Schools, or the Florida Council of Independent Schools . . . .*

§ 196.012(5), Fla. Stat. (emphasis added).

The parties disagree about whether the Academy falls within the section-196.012(5) definition of an "educational institution" and thus qualifies for this particular exemption. We review such questions of statutory interpretation de novo. *See State v. Purdy*, 252 So. 3d 723, 725 (Fla. 2018). Statutes providing for an exemption to an ad valorem tax are construed strictly, such that any ambiguity is resolved against the claimed exemption. *Nat'l Ctr.*, 248 So. 3d at 1257-58 (citing *Sowell*, 192 So. 3d at 30). A claimant bears the burden of clearly showing its entitlement to a tax exemption. *Id.* at 1258.

In this case, no one disputes that the Academy is a state-licensed private post-secondary school that grants certificates and degrees in acupuncture, Chinese herbal studies, and health science. But Property Appraiser Crapo argues that the Academy is not entitled to the exemption because it is not credentialed by, and does not offer classes or courses as required for credentialing by, one of the three entities identified in section 196.012(5): the State Department of Education of Florida, the Southern Association of Colleges and Schools, or the Florida Council of Independent Schools. Rather, the record evidence here only shows that the Academy's classes and courses satisfy licensing requirements of the Florida Commission for Independent Schools, which is not one of the entities the statute identifies. The circuit court concluded that Commission-issued licenses satisfy the statute's reference to certification by "the State Department of Education," but Property Appraiser Crapo argues that the Commission and Department are different entities for purposes of the exemption statute.

We cannot read section 196.012(5)'s reference to the "Department" as applying equally to the Commission, because Florida law distinguishes between Commission- and Department-certified schools. Although the education statute creating the Commission places it within the Department as an administrative

4

matter—*see* sections 1005.21(1), 1001.22, Florida Statutes—the Department's and Commission's school-certification regimes are not referenced interchangeably. Under section 1005.06(1), for example, institutions under the Department's jurisdiction are distinguished as "*not* under the jurisdiction and purview of the commission." (Emphasis added.) The statute dealing with barbering schools requires "a license issued by the Commission . . . pursuant to chapter 1005." § 476.178, Fla. Stat. But it also "shall not be construed to prevent certification [of barber training programs] by the Department of Education." *Id.* The same distinction between Commission licensing and Departmental certification is found in the cosmetology statute. § 477.023, Fla. Stat. It requires "a license issued by the Commission . . . pursuant to chapter 1005," but then also allows for the Department to certify cosmetology training programs. *Id.* An educational assistance program for National Guard members refers to institutions "licensed by the Commission" separately from training programs leading to certifications approved by the Department of Education. § 250.10(7), Fla. Stat. The Massage Practice Act does not mention Commission licensing at all, but rather defines a "[b]oard-approved massage school" as being "licensed by the Department of Education." § 480.033(9), Fla. Stat. Additionally, section 1005.05, Florida Statutes, distinguishes between the Commission and the Department with respect to pre-program application requirements for nonpublic colleges, by instructing as follows:

> Colleges under the jurisdiction of the Commission for Independent Education shall apply to the commission. Colleges that are not under the jurisdiction of the commission shall apply to the Department of Education.

§ 1005.05, Fla. Stat. These statutes undermine the Academy's argument that institutional licensing by the Commission is the same as certification by the Department.

In addition to having different school-approval regimes, we recognize that Florida law grants authority to the Commission independent from the Department, section 1005.21(1), Fla. Stat.; that Commission members are appointed through the Governor and Senate instead of via the Commissioner of Education, section 1005.21(2), Fla. Stat.; and that the Commission possesses

5

its own rulemaking authority, section 1005.22(1)(e), Fla. Stat. The Commission's independence from the Department in these areas also indicates that their respective school-certification regimes operate on different tracks.

In light of these statutes, we agree with Property Appraiser Crapo that the Commission's licensure is not the same as the Department's certification within the meaning of the tax-exemption statute. On the record presented, we cannot conclude that the Academy's programs satisfy the Department's certification requirements under section 196.012(5) merely because the programs satisfy the Commission's licensing requirements. Because the Academy did not carry its burden of clearly showing that it is an "educational institution" entitled to the property tax exemption, we reverse the final judgment. We also reject the Academy's alternative tipsy-coachman argument that the doctrine of administrative finality precluded further review of the tax-exemption issue the VAB addressed in 2008, and turn to that issue next.

### III. Procedure: Administrative Finality

The Academy's alternative argument is that Property Appraiser Crapo was barred from revisiting the tax exemption issue after he lost the same issue before the VAB in 2008, and did not raise the issue in a circuit court proceeding. This argument requires us to pull together a complex constitutional, statutory, regulatory, and factual framework to decide an important issue that is deceptively simple to state: Does administrative finality attach to VAB decisions that are *not* subsequently litigated in circuit court?[2]

---

[2] We acknowledge with appreciation the amicus briefs on this topic filed by the State of Florida Department of Revenue, the Property Appraisers' Association of Florida, and the Tax Section of The Florida Bar. All three of these entities assert that administrative finality does not attach to a VAB decision. We also agree with the Department of Revenue's observation in its amicus brief that a ruling contrary to the one we reach "will adversely impact the ability of taxpayers and property appraisers to access

Given the unique context of ad valorem taxation and exemptions, we must agree with Property Appraiser Crapo that administrative finality does *not* attach to VAB decisions. To achieve preclusive finality of a tax ruling requires either going directly to circuit court in the first instance, or filing suit in circuit court for de novo review and disposition of an issue previously presented to the VAB. The decision of a circuit court, if not appealed, then has preclusive effect. If the circuit court's decision is appealed, the appellate court's decision becomes the law of the case (absent further review and disposition by the Florida Supreme Court or the United States Supreme Court). A VAB decision alone does not have preclusive effect.[3]

## A. Statutory and Regulatory Framework

This analysis requires an understanding of the laws and rules establishing and governing the office of property appraiser and its authority over tax exemptions, VABs and their authority and processes, circuit court jurisdiction and standards for review of tax questions, and the oft-repeated maxim in tax law that "each year stands on its own." We address these topics in turn.

---

the administrative and judicial remedies that have long been held must function independently under a de novo standard of review, each tax year."

[3] We respect our concurring colleague's observation that the record reveals some potential factual differences between the Academy's first exemption application and the later one at issue here. However, we do not find that observation to require a different analysis for two reasons. First, the circuit court did not evaluate the legal effect of any factual differences, and we are not at liberty to do so in the first instance on appeal, even if we thought they might make a difference to the exemption question, which it appears they do not. Second, although the concurrence would ask first whether this case presents an exception to any doctrine of finality that might attach to a VAB decision, we conclude that administrative finality does not apply at all, so it is unnecessary to evaluate whether any exception to it might exist.

(1) Property Appraisers and Exemptions

Each Florida county has a property appraiser, who is an elected and independent constitutional officer charged with determining whether real property situated within the county is subject to ad valorem taxation; and if so, valuing the property and assessing tax on it. Art. VIII, § 1(d), Fla. Const.[4] Each property appraiser also has authority to determine whether property is entitled to a tax exemption. § 196.011, Fla. Stat. (requiring tax-exemption applications to be filed with property appraisers); § 196.193, Fla. Stat. (requiring property appraisers to review tax-exemption applications and determine whether to grant or deny them). This is an annually-repeating process, as discussed in greater detail below.

A property appraiser denying an initial or renewal application must notify the applicant, who then can choose any or all from among three options to challenge the denial: request an informal conference with the property appraiser under section 194.011(2), Florida Statutes; petition the VAB for review under section 194.011(3); or file suit in circuit court under section 194.171, either first among these options or after exercising one or both of the others. Each of these statutes provides that the dispute-resolution steps available before filing suit in circuit court are optional. It is not necessary to confer informally before seeking a VAB hearing or filing suit, and it is not necessary to go to a VAB hearing before filing suit.

Property appraisers also have the statutory right to file suit in circuit court after a VAB rules against them. § 194.036(1), Fla. Stat. (authorizing property appraisers to initiate circuit court proceedings (a) upon determining and asserting that the VAB contravened a provision of constitution, statute, or rule; (b) if the VAB arrives at an assessed value exceeding the property appraiser's assessed value by more than percentage amounts set forth; and (c) if the property appraiser asserts that the VAB is

_____

[4] The State's 67 property appraisers as a group make up a class of constitutional or state officers within the Florida Supreme Court's review jurisdiction. Art. V, § 3(b)(3), Fla. Const.

8

consistently and continuously violating the law or rules, thus triggering review by the Department of Revenue and potential action against the VAB).[5] Property Appraiser Crapo sued in circuit court under section 194.036(1)(a), asserting an erroneous construction and application of the educational tax exemption statute.

(2) VABs

Each Florida county has its own VAB, the members of which are two members of the county's governing body, one member of the school board, and two citizen members—one homestead property owner and one commercial business owner. § 194.015, Fla. Stat. The members of the VAB are not elected by the public or appointed by the Governor. The board of the governing body of the county chooses two members of the governing body to serve on the VAB, the school board elects one of its members to serve on the VAB, and then the governing body and the school board each appoint one of the other two VAB members. *Id.* Each VAB must have private counsel, who must have more than five years' experience practicing law. *Id.* To resolve factual issues in many proceedings, the VAB appoints a special magistrate, who does not have to be a lawyer, except in cases involving exemptions, in which

---

[5] The Tax Section's amicus brief, filed February 2, 2019, sets forth a useful history of the development of what are now called VABs, and provides context for why section 194.036(1)(c) allows property appraisers to reject VAB decisions through de novo lawsuits in circuit court. *See also Crossings At Fleming Island Cmty. Dev. Dist. v. Echeverri*, 991 So. 2d 793, 800 (Fla. 2008) (providing an historical synopsis). This provision of the statute seeks to address situations in which VABs may have strayed from their analytical and dispute-resolution roles under the influence of their positions as local politicians answerable to residents seeking to keep taxes low, or have over-corrected to the opposite result. The Tax Section, while opining that problems may continue to exist (which the Academy would deny), does not suggest that this happened here; and nor do we—but the historical perspective is helpful in understanding the evolution of the governing laws.

the special magistrate must be a lawyer admitted to the Florida Bar for at least five years. § 194.035(1), Fla. Stat.

The VAB has specific authority to hear disputes involving exemptions. § 194.032(1)(a)3., Fla. Stat. The VAB's role in exemption cases is to determine whether the taxpayer meets the statutory criteria for the specific exemption at issue. *See* Fla. Admin. Code R. 12D-9.027(4). The VAB must support all conclusions of law with findings of fact supported by record evidence, or the lack thereof. Fla. Admin. Code R. 12D-9.032(1)(a).

While it is tempting to try to analogize VAB decisions to a variety of other non-judicial processes, it is important to respect the differences between them.[6] The statutes expressly provide that a VAB is *not* an administrative tribunal under chapter 120 of the

---

[6] Even in a classic administrative-law context, the Florida Supreme Court has cautioned against applying preclusive doctrines. *See Thomson v. Dep't of Envtl. Regulation,* 511 So. 2d 989, 991 (Fla.1987) (noting that unlike courts that apply the law to past, static facts, administrative bodies often deal with "fluid facts and shifting policies") (internal references omitted); *Peoples Gas Sys., Inc. v. Mason*, 187 So. 2d 335, 339 (Fla. 1966) (explaining administrative bodies and "decid[e] issues according to a public interest that often changes with shifting circumstances and passage of time"); *see also Delray Med. Ctr., Inc. v. State, Agency for Health Care Admin.*, 5 So. 3d 26, 29 (Fla. 4th DCA 2009) (noting that preclusive doctrines do not "neatly fit" in administrative proceedings and should be applied with "great caution," and allowing agencies to revisit earlier decisions upon a showing of a significant change of circumstances, a demonstrated public interest, or in the event of "new facts, changed conditions, or additional submissions"). We find this reasoning persuasive in the tax context presented here, but decline to map the outer boundaries of administrative finality in other contexts. The dissent's extensive attempt to compare a VAB to many other local-government or administrative bodies, and its attempt to advocate for a different governing policy in this area, fails on the facts because this board is unique, and fails on the law because of the unique body of law already in existence that is foundational to tax law and practice.

Florida Statutes. § 194.034(1)(i), Fla. Stat. ("Chapter 120 does not apply to hearings of the value adjustment board."). Whereas appellate courts have jurisdiction to review the merits of orders entered in chapter-120 proceedings, circuit courts review de novo the issues presented to VABs, giving no precedential effect to VAB decisions. § 194.036(3), Fla. Stat.

A VAB is also *not* a local governing body like a city or county commission. It does not promulgate ordinances, determine and regulate local land use, or otherwise govern a locale. *See Broward Cty. v. G.B.V. Int'l, Ltd.*, 787 So. 2d 838 (Fla. 2001) (illustrating county commission function of regulating land use subject to limited and deferential court review); *Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523 (Fla. 1995) (recognizing right of judicial review of local administrative action of evicting tenant from public property, under increasingly narrow standards at each step of review); *City of Deerfield Beach v. Vaillant*, 419 So. 2d 624 (Fla. 1982) (noting right to review but explaining narrow scope of review of civil service board decision on employee termination). A VAB merely serves to informally resolve tax disputes or attempt to do so, and because of the de novo standard that applies in circuit court and the circuit court's original, exclusive jurisdiction, VAB decisions have no weight whatsoever in circuit court litigation. *See* § 194.036(3), Fla. Stat.[7]

(3) Circuit Court Jurisdiction

Two important concepts apply to circuit court adjudication of tax disputes: exclusivity and de novo review. The Florida

_____

[7] A VAB is also unlike the Public Service Commission, upon which the original panel relied to derive its finality conclusion. *See Fla. Power Corp. v. Garcia*, 780 So. 2d 34, 44 (Fla. 2001) (cited in original panel opinion, but dealing only with an attempt to revisit a previous determination of subject-matter jurisdiction over the same parties and issues). The PSC is something of a hybrid, with review of its decisions differing based on their content, but deferentially. *See, e.g.*, *Sierra Club v. Brown*, 243 So. 3d 903 (Fla. 2018) (illustrating direct review in supreme court required by Art. V, § 3(b)(2), Fla. Const. and deferential standard of review). We could expend additional resources evaluating every dispute-

11

Constitution gives circuit courts "*exclusive* original jurisdiction . . . in all cases involving legality of any tax assessment or toll" unless the Legislature changes that by general law. Art. V, § 20(c)(3), Fla. Const. (emphasis added). Far from having been changed by general law, this requirement remains codified at section 194.171(1) of the Florida Statutes ("The circuit courts have *original* jurisdiction at law of all matters relating to property taxation."), and at section 26.012(2)(e) ("[Circuit courts] shall have *exclusive original* jurisdiction: . . . In all cases involving legality of any tax assessment or toll or denial of refund.") (emphasis added). Thus, as already noted, it is not necessary for a taxpayer to seek informal resolution with the property appraiser or the VAB before filing suit in court. § 194.011(2), (3), Fla. Stat. Both the property appraiser and the taxpayer can go straight to circuit court to litigate an assessment or exemption issue, and skip the VAB altogether. § 194.171, Fla. Stat.

Regardless of the prior history of a dispute, review in circuit court is de novo: "The circuit court proceeding shall be de novo, and the burden of proof shall be upon the party initiating the action." § 194.036(3), Fla. Stat. In circuit court proceedings, there is no presumption of correctness as to exemptions. § 194.301(2)(d), Fla. Stat. ("If the challenge is to the classification or exemption status of the property, there is no presumption of correctness, and the party initiating the challenge has the burden of proving by a preponderance of the evidence that the classification or exempt status assigned to the property is incorrect.").

Thus, although proceedings in circuit court after earlier informal attempts at dispute resolution are sometimes called "appeals," a VAB decision is not "appealable" in the formal sense of an appeal as a review proceeding. *Crossings*, 991 So. 2d at 801 n.6 ("While this process is referred to as an 'appeal' of the board's decision, actions brought in the circuit court pursuant to section 194.032, now section 194.036, are original actions, not appeals." (quoting *Williams v. Law*, 368 So. 2d 1285, 1286 (Fla. 1979))). In circuit court proceedings, the VAB resolution has *no* precedential

---

resolution and decision-making body in the state for comparison to VABs, but to no practical avail, as the law enables us to resolve the issue before us without such an academic exercise.

value and is owed *no* deference; the property appraiser's decision is reviewed de novo. § 194.036(3), Fla. Stat.

(4) "Each year stands on its own."

The general maxim of "each year stands on its own" is foundational to the understanding of tax law, and has been extended to the context of tax exemptions and not merely valuations. *Page v. City of Fernandina Beach,* 714 So. 2d 1070, 1072 (Fla. 1st DCA 1998) ("The taxable status of property is determined on January 1 of each year. *See* Section 192.042, Florida Statutes (1973). This is the date on which the tax assessor determines whether a particular parcel of property is entitled to exemption from taxation *for the tax year*.") (emphasis added) (citing *Overstreet v. Ty–Tan, Inc.,* 48 So. 2d 158 (Fla.1950)); *Southlake Cmty. Found. v. Havill,* 707 So. 2d 361, 363 (Fla. 5th DCA 1998) (reaching merits of tax exemption denial following earlier memorandum from property appraiser that property was exempt); *S. Bell Tel. & Tel. Co. v. Broward Cty.,* 665 So. 2d 272, 274-75 (Fla. 4th DCA 1995) (accepting the rule that every tax year stands alone and finding on the facts presented that the rule was not violated); Op. Att'y Gen. Fla. 74-98 (1974) ("[T]he very nature of a tax exemption and the laws establishing the same preclude the application of this [preclusive] doctrine in tax exemption cases. . . . Each years . . . exemption must stand or fall on its own validity, unconnected with . . . any prior or subsequent year . . . ."); *see also Container Corp. of Am. v. Long,* 274 So. 2d 571, 573 (Fla. 1st DCA 1973) ("Ad valorem taxes assessed against property in this state for any given tax year must stand or fall on its own validity, unconnected with the assessment made against that land during any prior or subsequent year."), *superseded by statute in certain agricultural-exemption cases Tilton v. Gardner,* 52 So. 3d 771, 778 & n.5 (Fla. 5th DCA 2010).

This year-standing-alone concept reflects the nature of taxation and the annual taxation process established in the Florida Statutes. Property owners seeking tax exemptions must apply annually, and failure to file "shall constitute a waiver of the exemption privilege for that year." § 196.011(1)(a), Fla. Stat. After initially granting a tax exemption, the property appraiser in subsequent years mails the taxpayer a renewal application, but

the property appraiser retains the discretion to deny even a renewal application. § 196.011(6)(a), Fla. Stat. ("Such renewal application shall be accepted as evidence of exemption by the property appraiser *unless he or she denies the application*.") (emphasis added). The property appraiser also can request the county's governing body to waive the requirement of annual application for exemption as to properties not excluded from such waiver by statute, which then shifts to the property owner the burden of notifying the property appraiser proactively of any changes that may affect the exempt status of the property, subject to penalties for failure to do so. § 196.011(9)(a), Fla. Stat. Even in that context, which was the process followed in this case, the statute contemplates the property appraiser's discretion to deny an exemption. § 196.011(9)(e), Fla. Stat. ("If an exemption for which the annual application is waived pursuant to this subsection *will be denied by the property appraiser in the absence of the refiling of the application*, notification of an intent to deny the exemption shall be mailed to the owner of the property prior to February 1.") (emphasis added).[8]

The corollary to the maxim that "each tax year stands on its own" is that no taxpayer has a vested right to a tax exemption. *Sowell*, 192 So. 3d at 30-31 (relying in part on the statutory procedures for tax exemptions as evidencing the absence of a vested right to an exemption); *see also City of Largo v. AHF-Bay Fund, LLC*, 215 So. 3d 10, 14-15 (Fla. 2017) (noting nonprofit exemption statute requires taxpayer to take affirmative steps to request exemption on an annual basis; the exemption is not automatic and can be waived); *Spencer Estates of Fla., LLC v. Havill*, 125 So. 3d 795, 796 (Fla. 5th DCA 2012) (affirming circuit court's refusal to entertain taxpayer's attempt to punish property appraiser for failing to grant exemption in 2009 and 2010, where pending case determining taxpayer's entitlement to exemption involved only tax year 2008; "[e]ach [tax] year stands on its own"); *Davis v. Macedonia Housing Auth.*, 641 So. 2d 131, 132 (Fla. 1st DCA 1994) (expressly rejecting trial court's ruling that taxpayer

---

[8] The Department of Revenue's administrative rules also contemplate property appraisers' right to change their minds, excluding from "correction" procedures "changes in the judgment of the property appraiser." Fla. Admin. Code R. 12D-8.021(2)(d)7.

14

was to be granted charitable tax exemption for future years "absent a material change in applicable law or a material change in Plaintiff's status or operation," because exemption can be waived and entitlement to exemption must be affirmatively demonstrated annually).

## B. Analysis

This unique and detailed legal framework brings us to agree with Property Appraiser Crapo: administrative finality does not attach to a VAB decision that is not subsequently adjudicated in circuit court. Chief among the legal principles driving this result are the status of Florida's property appraisers as elected, independent constitutional officers; the exclusive original jurisdiction of circuit court in tax assessment matters under the constitution and sections 26.012(2)(e) and 194.171(1); the de-novo standard of review required by section 194.036(3); and the one-year-at-a-time concept embedded in rules, regulations, and longstanding tax law practice and procedure. These foundational principles permeate the processes set forth in the governing statutes, establishing an annual process subject to annual renewal or revisitation, embodying the concept that "each tax year stands on its own." The statutory scheme makes it clear that, while VAB proceedings may often be useful in informal dispute resolution, they are not to be accorded preclusive effect.

The dissent seems to argue that the Legislature's creation and regulation of VABs, and the role given them, at least does not preclude the possibility that VAB decisions have administrative finality effect. *See Fla. Export Tobacco Co. v. Dept. of Revenue*, 510 So. 2d 936, 955 (Fla. 1st DCA), review denied, 519 So. 2d 986 (Fla. 1987). In *Export Tobacco*, this Court held that the statutory authorization of tax refund remedies before the Comptroller or in Chapter-120 proceedings did not divest the circuit courts of original exclusive jurisdiction in tax assessment matters and did not confer res judicata effect upon such proceedings, and that only the Legislature can specify the extent of an administrative agency's quasi-judicial functions. 510 So. 2d at 955. If the Legislature had intended for VAB decisions to have administrative finality, it surely would not be difficult to pinpoint the statute so providing—but there is none. To the contrary, the Legislature has

expressly retained a statutory structure under which VAB decisions have no legal significance whatsoever in subsequent circuit-court litigation.

The dissent also argues that it is unfair not to give administrative-finality effect to VAB decisions because it forces taxpayers to defend their requests for exemptions year after year even if they think their property and its ownership and use have not changed from previous years when exemptions were granted. This argument is misplaced for several reasons. First, as a threshold factor, this argument overlooks that the statutory and regulatory framework mandates a year-at-a-time process. Even if an exemption is granted, and re-application waived in favor of an automatic renewal, it is only subject to the appraiser's statutory right to require a new or updated application. No one goes into this with an absolute "right" to avoid interacting with the property appraiser for more than a year.

Second, the nature of the dispute here was, and is, a threshold legal question—the proper interpretation of the educational exemption statute. Even if a tax-exemption statute does not change, there remains the possibility of differing interpretations of it over time as a body of law develops on it. This is especially true for a narrowly-applicable tax-exemption statute such as the one at issue here. One would not expect hordes of lawsuits generating reams of precedent on every arcane tax exemption, and indeed judicial precedent can be entirely lacking. A property appraiser's initial interpretation of an exemption statute may lie alone and untested until some precedent is created on the issue, or until a change of professional judgment—or a change of property appraiser—occurs. In either event, the property appraiser has not only the right but the duty to advance and apply the interpretation deemed legally correct at the time. A new office-holder should not be bound by erroneous positions taken by a predecessor and not adopted by an Article-V court. Our disposition of the Academy's licensing issue is a perfect example: it turns out Property Appraiser Crapo's professional judgment to deny this exemption was correct.

Third, the Academy's argument is one-sided, claiming a right to revisit VAB decisions upon a change in taxpayer facts but not

16

upon a change in circumstances on the property appraiser side. But a change on the taxpayer side of the equation cannot be the only route into circuit court. We can envision several circumstances under which a property appraiser may choose to litigate an issue that was not previously taken into circuit court. In addition to a change in interpretation of the law or the election of a new property appraiser, a property appraiser might choose not to fight an adverse VAB decision in any given tax year for a variety of reasons: lacking the budget or personnel or both to litigate; a cost/benefit analysis making the issue not worth fighting in any particular year; or changes in tax rates, an increase in the number and value of exemptions claimed, and economic conditions. When a significant issue arises that in a property appraiser's estimation of the balance of factors merits litigation, the property appraiser must be free to litigate in the first instance without being bound by prior VAB decisions; otherwise, the express statutory requirement of a de-novo standard of review in a circuit court denominated in the constitution as having original and exclusive jurisdiction is meaningless. The alternative would force property appraisers to preemptively litigate all significant tax exemptions annually lest they be penned in by their own equitable or economic-reality forbearance of a prior year. They simply do not have the resources to do that, and if they had to do it, the result would be to impose significant additional costs and delays on taxpayers who otherwise would get a bye for one or more years.

Finally, even putting aside the practical point that it is highly unlikely any elected property appraiser would "force" the same taxpayer to dispute an exemption ruling year after year, the statutes even-handedly provide taxpayers as well as property appraisers the means to obtain finality: file suit in circuit court. Taxpayers are free to try for a favorable ruling informally and then go to court if necessary, but also can go directly to circuit court. In either approach, taxpayers have available and within their control a clear path for obtaining finality.

In the unique context of ad valorem taxation, which by constitution, statute, and rule operates on a year-at-a-time cycle and mandates de-novo review in a circuit court having original and exclusive jurisdiction, we reject the Academy's administrative-finality argument, and reverse the circuit court's judgment.

17

REVERSED.

RAY, C.J., and WOLF, LEWIS, ROBERTS, ROWE, BILBREY, KELSEY, WINOKUR, and M.K. THOMAS, JJ., concur.

OSTERHAUS, J., concurs in part in an opinion in which B.L. THOMAS, J., joins.

MAKAR, J., dissents in an opinion in which WETHERELL and JAY, JJ., join.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

OSTERHAUS, J., concurring in part.

I concur in the Court's per curiam opinion, except for the part about administrative finality. I don't see the need to decide in broad strokes whether Value Adjustment Board decisions merit decisional finality because, regardless of the answer to this issue, the Academy's tipsy-coachman argument loses. *See Palm Beach Fla. Hotel & Office Bldg. Ltd. P'ship v. Nantucket Enters.*, 211 So. 3d 42, 45 (Fla. 4th DCA 2016) (avoiding adjudication of a first impression issue where the underlying evidence failed to support the argument). Administrative finality doesn't apply where the facts have materially changed. Here, even if administrative finality applies to VAB exemption decisions, the 2008 decision did not fit the new facts and changed conditions relied upon by the Academy to prove its case for the 2014 and 2015 tax-year exemptions. For this reason, the circuit court and VAB did not err by declining to apply decisional finality.

The Florida Supreme Court has warned courts and administrative agencies to apply the doctrine of res judicata "with 'great caution' in administrative cases." *Thomson v. Dep't of Envtl. Regulation*, 511 So. 2d 989, 991 (Fla. 1987). The Court in *Thomson* set forth a "proper rule" that res judicata will apply in administrative cases only if the subsequent case "is not supported

18

by new facts, changed conditions, or additional submissions by the applicant." *Id.* (citing *Doheny v. Grove Isle, Ltd.*, 442 So. 2d 966, 976 (Fla. 1st DCA 1983)); *see also Fla. Power Corp. v. Garcia*, 780 So. 2d 34, 44 (Fla. 2001).

This case involved new facts, new circumstances, and additional submissions, as well as an uber-equivocal exemption decision in 2008. Even the VAB itself refused to follow its own 2008 decision in this case. And it's not hard to see why. "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S.Ct. 1293, 1309 (2015) (quoting *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979)). In the 2008 case, the VAB relied completely upon the Special Magistrate's recommendation, which barely reached a conclusion on the Academy's exemption after reviewing the law and evidence. The Special Magistrate granted the exemption because it considered the statute "ambiguous and very difficult to comprehend":

> 2. The undersigned has read this statute again and again to try to understand its meaning. The statute appears to be unclear. There is no case law or other information which the undersigned could find which clarifies the statute or provides any assistance with its interpretation.
>
> . . . .
>
> 6. The Commission for Independent Education issued the Petitioner an annual license. . . .
>
> 7. This certification appears to allow the Petitioner to come within the meaning of "educational institution" as set forth in the statute. This would allow it to obtain an educational tax exemption.
>
> 8. This issue needs to be addressed by the Legislature to provide clarity. Reviewing this issue by reading all the statutes which are involved would seem to suggest that the Petitioner should be qualified as an educational institution and receive the appropriate tax

19

exemption. . . . <u>Taking all the above into consideration the undersigned is going to recommend that the petition be granted because the statute is ambiguous and very difficult to comprehend</u>.

(Emphasis added.) This result is exactly the opposite of how tax exemption issues are supposed to be decided. *See Nat'l Ctr. for Construction Educ. & Research Ltd., Corp. v. Crapo*, 248 So. 3d 1256, 1257-58 (Fla. 1st DCA 2018) (citing *Sowell*, 192 So. 3d at 30) (requiring tax exemptions to be strictly construed, with ambiguities resolved against the claimed exemption). The 2008 VAB, in turn, checked a box on the 2008 "Final Decision" form indicating that it "considered and adopts all the special magistrate's findings of fact and conclusions of law (attached)."

With such a vacillating 2008 order, it is not surprising that in 2014, the VAB put no stock in its own prior order. It declined the Academy's invitation to decide the 2014 and 2015 tax-year issues based on the 2008 decision, giving "no weight to the recommended decision of the VAB special magistrate from 2008, nor to the fact that the exemption was granted in that instance." It chose instead to make the exemption decision for tax years 2014 and 2015 based on the current evidence. And the circuit court made the same decision to let the 2014 and 2015 tax years stand on their own validity. Because of the doubtful quality of the 2008 decision and process, I see no error in the VAB and circuit court decisions against applying administrative finality and would not tipsy-coachman affirm this case. *See Powell v. State*, 120 So. 3d 577, 591 (Fla. 1st DCA 2013) (remarking that the tipsy coachman doctrine "does not compel [appellate courts] to overlook deficient records and blaze new trails").

In addition to the decisional deficiencies in the 2008 order, the case record in this case for tax years 2014 and 2015 contained new and different evidence. To begin with, the 2014-15 evidence included a new parcel that was not part of the 2008 case. According to the Academy's summary judgment evidence, it purchased an adjacent property in late 2014, that it claimed to be mostly used for educational purposes (part was leased to a third party for purposes not identified in the record). The Academy sought for an educational exemption to be applied to this property too, according

to the ratio of its educational use for the first time in this litigation. The question of whether this property qualified for the educational exemption was not part of the 2008 case. And administrative finality does not apply where there are new facts and changed conditions. *Thomson*, 511 So. 2d at 991. Each case must stand on its own.

The Academy also offered new exhibits and affidavits attesting to its ongoing educational work on the properties. Whereas the Special Magistrate's 2008 decision hinged on the Academy possessing a "certification appear[ing] to allow the Petitioner to come within the meaning of 'educational institution,'" the Academy put "voluminous" evidence into the 2014-2015 record of this case, as the Special Magistrate recognized. An affidavit from the Academy's Executive Director gave up-to-date information regarding educational programs offered on-site, numbers of students, descriptions of faculty and property, etc., with supporting exhibits. The Executive Director's affidavit also addressed state approval for the Academy's new bachelor's degree program: "On January 8, 2014, the Florida Department of Education Commission for Independent Education approved the Academy's request for a bachelor's degree program in Health Science." And it submitted other post-2008 exhibits, including: an application and documentation submitted to the Commission in 2014; its Renewal of Accreditation from ACAOM (2011); an approval letter from the United States Department of Education (2015); and a state Department of Revenue Consumer's Certificate of Exemption (2013). This evidence was key to bolstering the Academy's case for the 2014 and 2015 exemptions because of the statutory importance of showing that it conducted "regular classes and courses." § 196.012(5), Fla. Stat.

For his part, Property Appraiser Crapo disputed the efficacy of this evidence in the circuit court:

> It is the Defendant's burden to establish that they conduct regular classes and courses of study "required for eligibility to certification by . . . the State Department of Education of Florida . . .". (DOE) § 196.012(5), Fla. Stat. *Davis v. Macedonia Hous. Auth.*, 641 So. 2d 131 (Fla. 1st DCA 1994). The Defendant has never tendered any

21

evidence or rule of the DOE establishing the required regular classes or courses. . . .

And contrary to the dissent's view, I don't see a stipulation from the Property Appraiser in the record below or read the briefs to say that everything material remained static from 2008 to 2014. Nor did the circuit court make such a finding. The record shows that the parties contested this case based upon the current evidence. Thus, under administrative finality principles, because of the new and contested evidence, it was well within the discretion of the VAB and circuit court to resolve the case based on the current evidence instead of deferring to the 2008 decision. *See Delray Med. Ctr., Inc. v. State Agency for Health Care Admin.*, 5 So. 3d 26, 29 (Fla. 4th DCA 2009) (determining whether a significant change in circumstances has occurred for administrative finality purposes lies primarily within the discretion of the agency).

For these reasons, because of the equivocal 2008 decision and the existence of new facts, changed conditions, and post-2008 evidentiary submissions, and especially in view of the Florida Supreme Court's admonition to exercise "great caution" in applying decisional finality in administrative cases, I see no error in the decisions of the circuit court and VAB on this issue. Thus, I would not tipsy-coachman affirm this case.

———————————————

MAKAR, J., dissenting.

Florida's sixty-seven value adjustment boards, which issue formal written rulings in hundreds of property tax disputes annually after notice, evidentiary hearings, and many other due process protections, are quasi-judicial tribunals to which principles of finality and preclusion apply. For this reason, a property appraiser who fails to challenge a tax exemption previously granted by a value adjustment board may not relitigate the exemption absent a showing of changed circumstances, which admittedly do not exist in this case. Affirmance is thereby required.

22

## I.

The Academy for Five Element Acupuncture, Inc., was founded in 1995 as a not-for-profit private postsecondary school to provide academic instruction and clinical training in acupuncture, which is a regulated medical profession in Florida. *See* Chapter 457, Florida Statutes. The Academy held an educational tax exemption under 196.012(5), Florida Statutes, on its real and personal property in Broward County for over a decade.

In 2008, the Academy moved to Gainesville, Florida, where it purchased property in the southeastern quadrant of historic downtown and applied for the same tax exemption. Edward A. Crapo, Alachua County's property appraiser since his election in 1980, denied the exemption, asserting the Academy was not an "educational institution" for exemption purposes. Crapo and the Academy litigated the exemption in the Alachua County Value Adjustment Board (VAB), which ruled that the Academy was entitled to the educational exemption, a decision Crapo could have appealed, but did not.

Despite admitting that nothing had changed, Crapo denied the Academy's exemption in 2014 and has done so for each subsequent tax year, spawning this litigation in which the Academy again prevailed. A question on appeal is whether a property appraiser, who admits no change in circumstances, is barred by principles of res judicata from re-litigating a property tax exemption previously granted in a final order of a value adjustment board after an adjudicatory hearing where the property appraiser failed to appeal the prior decision. The question is answered by reviewing whether principles of res judicata apply to value adjustment boards, and, if so, whether any countervailing reasons exist to judicially exclude value adjustment boards from their application.

## II.

Our Nation's judicial systems have long recognized that principles of finality and preclusion apply not only to courts but to federal and state administrative bodies acting in a quasi-judicial capacity as well.

We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." . . . The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, . . . which acts in a judicial capacity.

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107-08 (1991) (citations omitted). The justification for preclusion is the "sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Id.* at 107. Allowing re-litigation of matters previously resolved would "impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution." *Id.* at 107-08 (citation omitted).

## A.

Florida is no different, where it is well-established that the decisions of governmental bodies acting in a quasi-judicial capacity are subject to principles of res judicata and collateral estoppel. *See Thomson v. Dep't of Envtl. Regulation*, 511 So. 2d 989, 991 (Fla. 1987) ("It is now well settled that res judicata may be applied in administrative proceedings."); *Holiday Inns, Inc. v. City of Jacksonville*, 678 So. 2d 528, 529 (Fla. 1st DCA 1996) ("Res judicata (and collateral estoppel) 'is applicable to rulings or decisions of administrative bodies[.]'") (citation omitted); *Jet Air Freight v. Jet Air Freight Delivery, Inc.*, 264 So. 2d 35, 40 (Fla. 3d DCA 1972) (same); *Metro. Dade Cty. Bd. of Cty. Comm'rs v. Rockmatt Corp.*, 231 So. 2d 41, 44 (Fla. 3d DCA 1970) (same); *Rubin v. Sanford*, 168 So. 2d 774, 775 (Fla. 3d DCA 1964) ("There is little question that administrative proceedings are subject to the

24

doctrine of *res judicata*,[9] and the courts of this state have similarly so concluded.") (footnote omitted). These principles of decisional finality apply unless a showing is made that a substantial change of circumstances has occurred that justifies a different result, as discussed in more detail later in this opinion. *See generally Thomson*, 511 So. 2d at 991 (proper rule "is that res judicata will apply only if the second application is not supported by new facts, changed conditions, or additional submissions by the applicant."); *Holiday Inns, Inc.*, 678 So. 2d at 528 (same).

A governmental body acts in a quasi-judicial manner when, after notice and a hearing, it enters a judgment based on the evidence presented. *See, e.g.*, *Broward Cty. v. La Rosa*, 505 So. 2d 422, 423 (Fla. 1987) ("An administrative agency conducts a quasi-judicial proceeding in order to investigate and ascertain the existence of facts, hold hearings, and draw conclusions from those hearings as a basis for their official actions."); *Anoll v. Pomerance*, 363 So. 2d 329, 331 (Fla. 1978) ("a judgment becomes judicial or quasi-judicial, as distinguished from executive, when notice and hearing are required and the judgment of the board is contingent on the showing made at the hearing."); *De Groot v. Sheffield*, 95 So. 2d 912, 915 (Fla. 1957) (". . . when notice and a hearing are required and the judgment of the board is contingent on the showing made at the hearing, then its judgment becomes judicial

---

[9] *See Fla. Fish & Wildlife Conservation Comm'n v. Wakulla Fishermen's Ass'n, Inc.*, 141 So. 3d 723, 726 (Fla. 1st DCA 2014) ("'The doctrine of res judicata applies when four identities are present: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality of the persons for or against whom the claim is made.' *Topps v. State*, 865 So.2d 1253, 1255 (Fla.2004)."). "Administrative finality" is a phrase sometimes used to describe res judicata in the administrative context. *Delray Med. Ctr., Inc. v. State Ag. for Health Care Admin.*, 5 So. 3d 26, 29 (Fla. 4th DCA 2009) ("In the field of administrative law, the counterpart to res judicata is administrative finality."). *See also Coral Reef Nurseries, Inc. v. Babcock Co.*, 410 So. 2d 648, 651 (Fla. 3d DCA 1982) ("The doctrine of administrative res judicata is firmly entrenched as part of the decisional law of the State of Florida in relation to zoning cases.").

or quasi-judicial as distinguished from being purely executive."); *cf. Teston v. City of Tampa*, 143 So. 2d 473, 476 (Fla. 1962) (holding that order of board of police and fireman's pensions fund not quasi-judicial because "it was a purely administrative determination without hearing or adversary evidence," noting that "the statute under which the [board] operates makes no requirement whatever for a notice and hearing preliminary to decision.").

> [T]he test of the quasi judicial function . . . [is] whether or not the statutory tribunal had exercised a statutory power given it to make a decision having a judicial character or attribute and consequent upon some notice or hearing provided to be had before it as a condition for the rendition of the particular decision made.

*W. Flagler Amusement Co. v. State Racing Comm'n*, 165 So. 64, 65 (Fla. 1935) ("A judicial or quasi judicial act determines the rules of law applicable, and the rights affected by them, in relation to past transactions."). Similarly,

> [i]f the affected party is entitled by law to the essentially judicial procedures of notice and hearing, and to have the action taken based upon the showing made at the hearing, the activity is judicial in nature. If such activity occurs other than in a court of law, we refer to it as quasi-judicial.

*Modlin v. City of Miami Beach*, 201 So. 2d 70, 74 (Fla. 1967); *see generally* Robert Lincoln & Sidney F. Ansbacher, *What's A Local Government Got to Do to Get Reviewed Around Here? Review of Local Administrative Actions by Common Law Certiorari After Pleasures II v. City of Sarasota*, 77 FLA. B.J. 50, 51 (2003) (discussing four minimum requirements for quasi-judicial hearings as notice, an informal hearing, a written decision based on the record, and fairness protections including an unbiased decisionmaker protected from ex parte contacts and political influence).

B.

Value adjustment boards in Florida easily meet the test for whether they act in a quasi-judicial manner in tax disputes: they are statutorily created tribunals specifically empowered to adjudicate and render binding decisions after notice, a hearing and broad due process protections. They are perfect examples of the type of statutorily created administrative bodies that the state constitution says may be given quasi-judicial powers. Art. V, § 1, Fla. Const. ("Commissions established by law, or administrative officers or bodies may be granted quasi-judicial power in matters connected with the functions of their offices."); *see, e.g., Verdi v. Metro. Dade County*, 684 So. 2d 870, 874 (Fla. 3d DCA 1996) (county code enforcement proceedings that involve hearing officer rulings appealable to the circuit court "fall squarely within the parameters of a constitutionally authorized quasi-judicial proceeding.").

Value adjustment boards are among the most structured and regulated administrative tribunals in the State of Florida. They operate within a highly detailed statutory and regulatory framework, the sole purpose of which is to facilitate the full and fair *adjudication* of disputes as to property tax assessments, exemptions, classifications, deferrals, and related matters. Their raison d'être is to adjudge property tax disputes. An entire chapter of the Florida Statutes—Chapter 194, entitled "Administrative and Judicial Review of Property Taxes"—is devoted to value adjustment boards and their role in the adjudication of property tax disputes. *See* §§ 194.011-194.3015, Fla. Stat. (2019). Supplementing this 30+ pages/9000+ words of statutory language are voluminous regulations, adopted by the Department of Revenue, to implement this statutory structure, consisting of thirty-seven rules—all with multiple subparts, sub-subparts and sub-sub-subparts—whose word counts far exceed that of their implementing statutes (approximately 20,000+ words). *See* Fla. Admin. Code R. 12D-9.001 to 12D-9.038 (2019).

Value adjustment board hearings are not subject to the general administrative process statute, Chapter 120, for good reason: they have their own hyper-detailed statutory framework. § 194.034(1)(i), Fla. Stat. (2019). ("Chapter 120 does not apply to

27

hearings of the value adjustment board."); *see also* Kent Wetherell, *The New Burdens of Proof in Ad Valorem Tax Valuation Cases*, 25 FLA. ST. U. L. Rev. 185, 193–94 (1998) ("The hearings on the petitions, whether conducted by the value adjustment board or a special master, are quasi-judicial in nature and must be conducted in accordance with the rules adopted by DOR.").

*Value Adjustment Board Composition & Independence.* Value adjustment boards are designed to provide for collegial and ethical decision-making, insulated from improper influences, political and otherwise. Each county has a value adjustment board consisting of five members: two county commissioners, one school board member, and two citizens.[10] All value adjustment board members are subject to ethical restrictions including recusal standards and prohibitions on conflicts of interest.[11] Each value adjustment board is required to have its own legal counsel, who must be a private practitioner with at least five years of experience.[12] Legal counsel has broad responsibilities to both the board itself as well as the fairness of the process.[13] Like board members, legal counsel are

---

[10] One citizen member, who is appointed by the county, must own homestead property in that county; the other, who is appointed by the school district, must own a business occupying commercial space in that district. § 194.015, Fla. Stat. (2019).

[11] *See* Fla. Admin. Code R. 12D-9.022 (2019). Disqualification or Recusal of Special Magistrates or Board Members.

[12] *Id.* R. 12D-9.008(1)-(2) (2019) ("Each value adjustment board must appoint private legal counsel to assist the board . . . This legal counsel must be an attorney in private practice . . . [and] must have practiced law for over five years" prior to appointment.); *see also* § 194.015, Fla. Stat.

[13] A primary role is advising the board to ensure its actions are lawful and done "in a manner that will promote and maintain a high level of public trust and confidence in the administrative review process." Fla. Admin. Code R. 12D-9.009(1)(b) (2019). Legal counsel "is not an advocate for either party in a value adjustment board proceeding, but instead ensures that the proceedings are fair

subject to ethical restrictions and prohibitions on conflicts of interest.[14]

*Special Magistrates.* Value adjustment boards are assisted in their adjudicatory responsibilities by special masters who are experienced attorneys with specialized training and qualifications.[15] Their role "is to conduct hearings, take testimony and make recommendations to the board regarding petitions filed before the board."[16] § 194.035, Fla. Stat. (2019); Fla. Admin. Code R. 12D-9.011(1) (2019). Special magistrates must meet general qualifications and specific ones depending upon the type of issues to be heard.[17] For instance, a special magistrate appointed to hear a tax exemption issue "must be a member of The Florida Bar, must

---

and consistent with the law." *Id.* R. 12D-9.009(1)(c); *see generally* § 194.015, Fla. Stat.

[14] Legal counsel "should avoid conflicts of interest or the appearance of a conflict of interest in their representation." Fla. Admin. Code R. 12D-9.008(5).

[15] Counties with populations over 75,000 must have special magistrates, who are optional in counties with lesser populations. § 194.035(1), Fla. Stat (2019); Fla. Admin. Code R. 12D-9.010(1)-(2) (2019).

[16] Their duties include: "(a) Accurately and completely preserve all testimony, documents received, and evidence admitted for consideration; (b) At the request of either party, administer the oath upon the property appraiser or tax collector, each petitioner and all witnesses testifying at a hearing; (c) Conduct all hearings in accordance with the rules prescribed by the department and the laws of the state; and (d) Make recommendations to the board which shall include proposed findings of fact, proposed conclusions of law, and the reasons for upholding or overturning the determination of the property appraiser or tax collector, also see Rule 12D-9.030, F.A.C." Fla. Admin. Code R. 12D-9.011(1)(a)-(d) (2019).

[17] *Id.* R. 12D-9.010(4); *See* § 194.035, Fla. Stat.

have at least five years of experience in the area of ad valorem taxation, and must receive training provided by the department."[18] The "selection of a special magistrate must be based solely on the experience and qualification of such magistrate, and must not be influenced by any party, or prospective party, to a board proceeding or by any such party with an interest in the outcome of such proceeding."[19] Special magistrates must adhere to the disqualification and recusal standards that apply to board members.[20]

*Board Clerks.* Each value adjustment board has a clerk with broad responsibilities: to ensure that statutory requirements are met, to make petition forms available to the public, to receive petitions and schedule hearings, and to ensure notice of and public access to all board hearings. § 194.011, Fla. Stat. (2019); Fla. Admin. Code R. 12D-9.007(1)-(4) (2019). The clerk "is the official record keeper for the board and shall maintain a record of the proceedings," including "(a) All filed documents; (b) A verbatim record of any hearing; (c) All tangible exhibits and documentary evidence presented; (d) Any meeting minutes; and (e) Any other documents or materials presented on the record by the parties or by the board or special magistrate." Fla. Admin. Code R. 12D-9.007(12).

*Formal adjudication process.* The adjudication process used by value adjustment boards has every safeguard of due process necessary for a quasi-judicial body and more: notice, the opportunity to be heard directly or through legal counsel (or other

---

[18] § 194.035(1), Fla. Stat.; Fla. Admin. Code R. 12D-9.010(4)(d)(1). As an alternative, the special magistrate may be "a member of The Florida Bar with at least three years of experience in ad valorem taxation and who has completed board training provided by the department including the examination[.]" *Id.* R. 12D-9.010(4)(d)(1).

[19] § 194.035(1), Fla. Stat.; Fla. Admin. Code R. 12D-9.010(5)(b).

[20] Fla. Admin. Code R. 12D-9.022. Disqualification or Recusal of Special Magistrates or Board Members.

specified property-related professionals), the right to present evidence, the right to cross-examination, the right to an unbiased decision and decision-maker, the right to appeal, and so on. *See Bush v. City of Mexico Beach*, 71 So. 3d 147, 150 (Fla. 1st DCA 2011) ("A quasi-judicial hearing generally meets basic due process requirements if the parties are provided notice of the hearing and an opportunity to be heard. In quasi-judicial zoning proceedings, the parties must be able to present evidence, cross-examine witnesses, and be informed of all the facts upon which the commission acts.") (quoting *Jennings v. Dade Cty.*, 589 So. 2d 1337, 1340 (Fla. 3d DCA 1991)). Indeed, a list of eighteen specific due process rights established by law are granted to taxpayers in value adjustment board proceedings. *See* Fla. Admin. Code R. 12D-9.001 (2019). (Entitled "Taxpayer Rights in Value Adjustment Board Proceedings.") (listed in Appendix); *see generally* Art. I, § 25, Fla. Const. ("By general law the legislature shall prescribe and adopt a Taxpayers' Bill of Rights that, in clear and concise language, sets forth taxpayers' rights and responsibilities and government's responsibilities to deal fairly with taxpayers under the laws of this state."); § 192.0105, Fla. Stat. (creating a "Florida Taxpayer's Bill of Rights for property taxes and assessments" listing twenty-nine specific rights and obligations to "guarantee that the rights, privacy, and property of the taxpayers of this state are adequately safeguarded and protected during tax levy, assessment, collection, and enforcement processes administered under the revenue laws of this state.").

The decisional process by which value adjustment boards adjudicate property tax disputes parallels—and exceeds in some regards—that of administrative entities governed by Chapter 120. Taxpayers objecting to assessments have the right to an informal conference with the property appraiser, but they may also file a formal petition directly with the board. § 194.011(2) & (3), Fla. Stat.; Fla. Admin. Code R. 12D-9.001(b) & (c). The form, content, and fees for petitions are set forth in detail in the administrative code, which parallels that for civil courts, specifying in detail the processing of late petitions, how filing and service of legal documents are accomplished, and so on. *See* Fla. Admin. Code R. 12D-9.015 (2019). Hearings are scheduled based on a range of factors including the complexity of issues. *Id.* R. 12D-9.019(1)(b) (2019). Notices of hearings are required to be served in a specified

manner at least 25 days beforehand. *Id.* R. 12D-9.019(3)(a). Prior disclosure of evidence, testimony and documents is required.[21] Admissibility and use of evidence is governed by the trier of fact who consults with the board's legal counsel and who must reflect her ruling in the record.[22]

*Appeals.* By statute, the property appraiser may appeal under specified circumstances such as a legal error by the board or a specific violation of an administrative rule. § 194.036(1)(a), Fla. Stat. (2019). Property owners may appeal by bringing "an action to contest a tax assessment" under section 194.171, Florida Statutes, which provides for circuit courts to have original jurisdiction in tax cases. In either case, the "circuit court proceeding shall be de novo, and the burden of proof shall be upon the party initiating the action." *Id.* § 194.036(3).[23]

## C.

*The 2008 and 2014 VAB Proceedings.* The formal adjudication process, as described above, applied to both the 2008 and 2014 hearings in this case. In 2008, the Academy petitioned the VAB and the case was assigned to a special magistrate who held an

---

[21] *See Id.* R. 12D-9.020(1)(a) (2019).

[22] *Id.* R. 12D-9.025(2)(d) (2019).

[23] Absent an appeal by agencies subject to Chapter 120 or one granted by statute (as is the case here), review of quasi-judicial decisions of governmental bodies is via certiorari. Fla. R. App. P. 9.190(b)(3) (2019) ("Review of quasi-judicial decisions of any administrative body, agency, board, or commission not subject to the Administrative Procedure Act shall be commenced by filing a petition for certiorari in accordance with rules 9.100(b) and (c), unless judicial review by appeal is provided by general law."); *see generally* Victoria L. Cecil, *The Appealing Nature of Local Code Enforcement Board Decisions*, 82 FLA. B.J. 42, 42 (2008) (discussing "often overlooked" exception that appellate review for quasi-judicial decisions of governmental bodies may be provided by general law).

evidentiary hearing, accepted and evaluated evidence, and heard legal argument from attorneys representing the Academy and Crapo. The special master issued its written report, which contained detailed "Findings of Fact and Conclusions of Law" for the VAB's review and consideration. The VAB issued a "Final Decision," dated November 16, 2008, that adopted the report's findings of fact and conclusions of law and granted the Academy's petition. Crapo had the right to appeal the VAB's final decision to circuit court but did not do so.

The Academy retained its exemption from 2008 through 2013. In June 2014, however, Crapo issued a notice disapproving the exemption, asserting that the Academy did not meet the statutory definition of an "educational institution," yet asserting no changed factual or legal circumstances. To challenge the denial, the Academy petitioned the VAB, and a hearing was held before a different special magistrate, who—contrary to the 2008 disposition—recommended denial of the Academy's petition. The VAB adopted the special magistrate's findings of fact, but rejected her legal conclusion. Crapo appealed to the circuit court, which— upon a factual stipulation, motions for summary judgment and extensive legal memos, and an evidentiary hearing—affirmed the VAB's final decision,[24] finding that the Academy met the definition of "educational institution," though rejecting its argument that the doctrine of res judicata applied to the VAB's 2008 final judgment. Crapo appealed the exemption issue and the Academy cross-appealed the decisional finality issue, this opinion addressing the latter.

III.

A.

The extensive statutory and regulatory overlay that governs value adjustment boards and their adjudication of property tax disputes, including extensive due process protections, indisputably

---

[24] The trial court's order held that the Academy "establish[ed] its right to an educational institution exemption for tax years 2014 and 2015" because the parties agreed to resolve both tax years in this proceeding.

33

establish that judgments of value adjustment boards arising from the formal adjudication process are quasi-judicial and subject to principles of res judicata and decisional finality. Just like the quasi-judicial decisions of other governmental bodies in Florida, the decisions of value adjustment boards are entitled to precedential effect in the year issued as well as subsequent years unless sufficient changed circumstances are demonstrated. *See Delray Med. Ctr., Inc.*, 5 So. 3d at 29 ("Florida courts do not apply the doctrine of administrative finality when there has been a significant change of circumstances or there is a demonstrated public interest."); *Univ. Hosp., Ltd. v. State, Agency for Health Care Admin.*, 697 So. 2d 909, 912 (Fla. 1st DCA 1997) ("res judicata cannot bar a subsequent application for a permit if the second application is 'supported by new facts, changed conditions, or additional submissions by the applicant.'"); *Holiday Inns, Inc.*, 678 So. 2d at 528 (same).

In this District, application of res judicata to quasi-judicial decisions of administrative bodies has been clearly established for decades. In *Holiday Inns, Inc. v. City of Jacksonville*, a precedent with striking parallels to this case, the lessee of an abandoned hotel was cited in 1994 for violations of the City's ordinance code. 678 So. 2d at 528. A hearing was held before the Municipal Code Enforcement Board, which ruled that the lessee, not the owner, was the legally responsible party for the violations. Due to the lessee's continued non-compliance, a year later in 1995 the Board assert the identical code violations, but this time ruled that the owner was the responsible party. The owner sought review in the circuit court, which affirmed the Board's ruling. This Court, however, reversed based on principles of decisional finality that applied to the Board's actions, concluding that the city was barred from re-litigating the issue of who was responsible for the ongoing code violations. The Court stated the general principle that:

> Res judicata (and collateral estoppel) "is applicable to rulings or decisions of administrative bodies ... unless it can be shown that since the earlier ruling thereon there has been a substantial change of circumstances relating to the subject matter with which the ruling was concerned sufficient to promote or prompt a different or contrary determination."

34

*Id.* at 529 (quoting *Rockmatt,* 231 So. 2d at 44 (applying principles of res judicata to zoning board ruling where "no such showing was made or attempted in this instance" of a substantial change of circumstances)); *see also Jet Air Freight*, 264 So. 2d at 40 (stating "[w]here an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it, as to which parties have had an adequate opportunity to litigate, the court will apply res judicata or collateral estoppel to enforce repose.").

Just like the Academy in this case, the hotel owner in *Holiday Inns* pointed out that nothing had changed from the prior year that justified a departure from the Board's 1994 ruling. This Court agreed, stating:

> *. . . The second hearing pertained to the same violations on the same piece of property*, and there had been *no substantial change* in the parties' legal status as to the subject property prior to the second hearing before the code enforcement board. Under these facts, we find that *the board was without power to reverse its previous determination* concerning liability.

678 So. 2d at 529-30 (footnotes omitted) (emphasis added). Applying the language of *Holiday Inns* here, the subsequent VAB proceeding in 2014 "pertained to the same [exemption] on the same piece of property, and there had been no substantial change" affecting the property's legal status. Under these circumstances, the VAB's 2007 ruling precluded a reversal of the exemption previously granted, there being *no* changed circumstances (let alone a substantial change).

Notably, in *Holiday Inns* the "city candidly concede[d] that while they did not seek a rehearing or appeal the previous order that *the second proceeding was brought to correct a mistake of law* made by the board in that order." *Id.* at 530 n.3. (emphasis added). That's exactly what happened here. Crapo did not seek rehearing or appeal the 2007 VAB order; instead, he waited and later brought the 2014 proceeding to correct what he viewed as a mistaken legal ruling by the VAB in 2014. *Holiday Inns* precludes precisely this

35

type of duplicative litigation that offends basic principles of finality where no change in facts or law are alleged.

B.

Nonetheless, Crapo and amici make several counter-vailing arguments that res judicata should not apply to value adjustment board decisions, but they are either not well taken or based on policy rather than legal grounds.

1.

Crapo and amici urge that because de novo review of value adjustment board decisions is available on appeal in circuit courts, section 194.036(1)(a), Florida Statutes, final judgments of value adjustment boards are entitled to no preclusive effect. He claims that his failure to pursue an available appellate remedy in 2008 is irrelevant because only a circuit court judgment has preclusive effect and value adjustment board decisions have no effect other than in the tax year issued.

His argument, in large measure, was rejected by the United States Supreme Court in *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015), which recently addressed whether the *availability* of de novo review on appeal of an administrative tribunal's judgment operates to void or nullify the preclusive effect of the tribunal's judgment where no appeal is taken. It resoundingly, and convincingly, explained why it does not.

In an opinion by Justice Alito, the Court noted that its own cases and the Restatement of Judgments "make clear that issue preclusion is not limited to those situations in which the same issue is before two *courts*. Rather, where a single issue is before a court and an administrative agency, preclusion also often applies." *Id.* at 1303.

> Indeed, this Court has explained that because the principle of issue preclusion was so "well established" at common law, in those situations in which Congress has authorized agencies to resolve disputes, "courts may take

36

it as given that Congress has legislated with the expectation that the principle [of issue preclusion] will apply except when a statutory purpose to the contrary is evident." . . . *This reflects the Court's longstanding view that "'[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.'"*

*Id.* (emphasis added) (citation omitted). Buttressing the highlighted principle, the Court relied on the Restatement of Judgments, which explains (with limitations not applicable here) that "*a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court*"). *Id.* (quoting Restatement (Second) of Judgments § 83(1), at 266) (emphasis added).

The Court also noted that neither the federal statute at issue nor its structure "forbid issue preclusion." *B & B Hardware, Inc.*, 135 S. Ct. at 1305. Courts "take it as a given" that a well-established common law principle of adjudication, such as the application of res judicata to quasi-judicial decisions, applies "except 'when a statutory purpose to the contrary is evident.'" *Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 108 (citation omitted). Because it is "taken as a given" that res judicata principles apply to quasi-judicial decisions, a statute explicitly saying the contrary is required to overcome this presumption. None exists as to value adjustment boards in Florida, making it illogical and contrary to precedent to dictate that the legislature must affirmatively grant res judicata effect to their quasi-judicial decisions. That's precisely backwards; it takes an ipse dixit wand to judicially nullify what the United States Supreme Court has said is taken as a given.

And the fact that de novo review was available on appeal to the district court did not diminish the preclusive effect of the un-appealed adverse decision.

Granted, one can seek judicial review of a TTAB [Trademark Trial and Appeal Board] registration

decision in a *de novo* district court action, and some courts have concluded from this that Congress does not want unreviewed TTAB decisions to ground issue preclusion. . . . But that conclusion does not follow. *Ordinary preclusion law teaches that if a party to a court proceeding does not challenge an adverse decision, that decision can have preclusive effect in other cases,* **even if it would have been reviewed de novo**.

*B & B Hardware, Inc.*, 135 S. Ct. at 1305. (emphasis added) (citing Restatement (Second) of Judgments § 28, Comment *a* and Illustration 1). The highlighted language makes clear that preclusion principles are not affected by the availability of a de novo appeal such as that provided in section 194.036(1)(a), Florida Statutes. Stated differently, ordinary preclusion law establishes that an unchallenged adverse decision of a value adjustment board has preclusive effect "even if it would have been reviewed *de novo*" in the circuit court. Imagine if the legislature amended Florida law to allow county court decisions to be appealed to the circuit courts for de novo review. It is unimaginable that by simply allowing more generous appellate review the legislature intended to deprive un-appealed county court judgments of preclusive effect in subsequent court proceedings.

The principles of *B & B Hardware, Inc.*, are consistent with the legal principle in Florida that res judicata applies to decisions of quasi-judicial bodies absent some changed circumstances. After an adequate opportunity to litigate the exemption issue, Crapo could have challenged the 2008 VAB decision by seeking de novo relief in the circuit court, but he did not. Ordinary preclusion principles hold that the VAB's decision is res judicata, and that Crapo's later challenge to the Academy's exemption is subject to decisional finality because it is based on the identical facts and legal issues previously litigated and decided in the Academy's favor in 2008. Having taken no steps to appeal that determination, Crapo cannot now seek to annul the basis of that decision absent some relevant change in either the factual basis for the Academy's exemption or the applicable law since that time. Because no changed circumstances exist, the Academy was justified in relying on the prior VAB determination as to its exemption. It was error for the trial court to allow Crapo's challenge to proceed.

2.

On a related point, Crapo and amici suggest that only circuit courts have jurisdiction to adjudicate tax disputes, but they overlook that circuit courts do not have "exclusive original jurisdiction" over property tax matters. To the contrary, when article V of the state constitution was amended in 1972, the *schedule* to the amendment set forth in section 20(c)(3) provided for such jurisdiction ("involving legality of any tax assessment") after the amendment's effective date but only "*until changed by general law* consistent with sections 1 through 19 of this article[.]" Art. V, § 20(c)(3), Fla. Const. (emphasis added). As explained in *Florida Export Tobacco Co., Inc. v. Department of Revenue*, "[s]ection 20, being a *schedule* to article V, was intended to provide for the transition from the old to the new court system and served to preserve the existing jurisdiction of all courts 'until changed by general law' consistent with sections 1 through 19 of article V." 510 So. 2d 936, 948 (Fla. 1st DCA 1987). The 1972 constitutional changes "did not, therefore, abrogate the existing exclusive original jurisdiction of circuit courts in such cases, *but merely provided that such jurisdiction could be expressly 'changed by general law.'*" *Id.* at 949 (emphasis added).

General law has expressly changed how property tax disputes are handled by empowering value adjustment boards to adjudicate a wide range of property tax matters with de novo appellate review in the circuit courts, which also continue to have *original* jurisdiction—but not *exclusive* original jurisdiction—in tax cases filed there directly. The specific jurisdictional statute in the tax code dealing with tax matters does not use the word "exclusive." *See* § 194.171(1), Fla. Stat. (2019) ("The circuit courts have original jurisdiction at law of all matters relating to property taxation."). Indeed, the 1972 amendments to article V provided that the legislature could establish by law administrative bodies, such as value adjustment boards, that would "*be granted quasi-judicial power in matters connected with the functions of their offices.*" Art. V, § 1, Fla. Const. (emphasis added). "With this change of language, the constitution permitted the legislature, by duly enacted legislation, to grant appropriate quasi-judicial power to administrative officers or bodies so long as it pertained to matters

connected with the functions of their offices." *Fla. Exp. Tobacco Co., Inc.*, 510 So. 2d at 948.

The question of whether an administrative body or agency, such as a value adjustment board or the state comptroller, could exercise *concurrent* jurisdiction with circuit courts as to the same tax matters was answered in the affirmative in *Florida Export Tobacco*, in which this Court stated:

> We agree . . . that the 1972 amendments to the constitution authorized the legislature to give administrative officers and agencies quasi-judicial jurisdiction in matters connected with the functions of their offices, and that *such jurisdiction could legally be exercised concurrently with original, nonexclusive jurisdiction given to circuit courts over the same matters. . . . We likewise agree that such "quasi-judicial jurisdiction" could, by general law expressly so providing, embrace disputes over the legality of tax assessments*.

510 So. 2d at 948–49 (emphasis added). The highlighted language makes clear that the legislature can establish "quasi-judicial jurisdiction" in administrative agencies that is concurrent with the circuit courts. Indeed, this Court held that the legislature can create administrative tribunals that adjudicate tax disputes, stating that "[b]ased upon extensive additional research and study, we find no legal impediment to the legislature's enactment of general legislation to permit [the Department] to administratively adjudicate the legality of tax assessments, should the taxpayer so elect." *Id.* at 949. The legislature has done so by establishing value adjustment boards.

In *Florida Export Tobacco*, this Court was unable to find any legislative authority for the Department of Revenue or Comptroller to exercise concurrent quasi-judicial jurisdiction with the circuit courts over tax assessment matters; the result was that agency tax rulings were not deemed quasi-judicial and not subject to res judicata principles. In sharp contrast, the extensive legislation establishing value adjustment boards as adjudicators of property tax disputes (with appeals to, and direct actions permitted in, the circuit courts) establishes beyond a doubt the

40

boards' quasi-judicial jurisdiction over property tax matters and that its jurisdiction is concurrent with the circuit court, meaning that its rulings are entitled to finality and preclusive effect. If that were not the case, and circuit courts continued post-1972 to be the *only* constitutionally permissible fora to adjudicate property tax disputes, the creation of an elaborately detailed statewide system of value adjustment boards would be a nullity and board decisions would be of *no effect*. That is because a "judicial or quasi-judicial decision will not be given res judicata effect where rendered by a tribunal lacking subject matter jurisdiction." *Id.* at 943.

Moreover, the vesting of circuit courts with "exclusive original jurisdiction" in the *general* jurisdiction statute, section 26.012(2)(e), Florida Statutes (circuit courts have "exclusive original" jurisdiction in "all cases involving legality of any tax assessment or toll or denial of refund, except as provided in s. 72.011"), as to certain tax matters, does not trump the *specific* jurisdictional statute *in the tax code* with language to the contrary. *See* § 194.171(1), Fla. Stat. (circuits courts "have original jurisdiction at law of all matters relating to property taxation."). That's because "a specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms." *McKendry v. State*, 641 So. 2d 45, 46 (Fla. 1994); *Stevens v. State*, 127 So. 3d 668, 669 (Fla. 1st DCA 2013) (same). To read section 26.012(2)(e) and section 72.011 as both providing "exclusive original jurisdiction" is mistaken; the word "exclusive" is only in the general statute. A such, the legislature is not precluded from creating quasi-judicial bodies whose decisions are subject to judicial review, as *Florida Export Tobacco* envisioned. Moreover, the terms "original" and "exclusive" regulate jurisdiction of cases between *courts* established by the state constitution; they do not preclude the grant of concurrent quasi-judicial jurisdiction to administrative agencies over matters related to property tax disputes. Art. V, § 1, Fla. Const.; *Fla. Exp. Tobacco, Co., Inc.*, 510 So. 2d at 948–49.

3.

Next, Crapo relies on the general tenet that each tax year's assessment "must stand or fall on its own validity" without reference to prior years, a principle that exists primarily due to the

41

fluidity of rapidly changing circumstances that affect the factual and legal bases for the *value* of property underlying an assessment. *Container Corp. of Am. v. Long*, 274 So. 2d 571, 573 (Fla. 1st DCA 1973) ("Ad valorem taxes assessed against property in this state for any given tax year must stand or fall on its own validity, unconnected with the assessment made against that land during any prior or subsequent year."); *see Page v. City of Fernandina Beach*, 714 So. 2d 1070, 1076 n.5 (Fla. 1st DCA 1998) (quoting *Container Corp.*, 274 So. 2d at 573). Changed circumstances oftentimes favor property appraisers, who have much discretion in their assessment authority to address current circumstances: where new facts or changed laws arise, prior assessments are subordinate to the determination of whether current circumstances support a change in an assessment. This principle applies to exemptions as well: if the factual or legal basis for a previously granted exemption has changed, an assessor may address the exemption's application under the current circumstances.

But nothing changed factually or legally as to the Academy's exemption, rendering this general tenet inapplicable. The doctrine of res judicata is applied with caution, particularly in zoning and permitting cases, because facts and circumstances are often not stagnant and subject to change. *Thomson*, 511 So. 2d at 991. But that caution does not apply in this case: Crapo admits that nothing at all has changed. Expanding the already broad authority of property appraisers to allow repetitive and vexatious administrative challenges to previously granted tax exemptions serves no cognizable purpose where the factual and legal underpinnings of an exemption remain unchanged. Doing so amounts to an impermissible second attempt to deny a previously granted exemption. *Holiday Inn*, 678 So. 2d at 529-30.

Plus, it cannot be that every tax year stands or falls on its own validity in all cases because, as Crapo concedes, res judicata applies to all adverse circuit court rulings including those not appealed. By his admission, if Crapo fails to appeal an adverse circuit court ruling granting a tax exemption, he is precluded from challenging the same exemption in future tax years absent changed circumstances. By extension, because the general tenet (i.e., "every tax year stands or falls on its own") is inapplicable

42

where a circuit court has ruled on the matter and no appeal is taken, it is likewise inapplicable where a value adjustment board has ruled on the matter and no appeal is taken. *B & B Hardware, Inc.*, 135 S. Ct. at 1305. In short, the general tenet does not trump core principles of finality and preclusion.

Likewise, the preclusive effect of an adverse ruling by a circuit court does not depend on *why* a property appraiser chose to not pursue an appeal. A property appraiser's choice to not appeal an adverse ruling may be due to litigation costs, budgeting issues, economic conditions, policy choices, or other strategic reasons, none of which affect the adverse ruling's preclusive effect: the unappealed circuit court ruling controls and principles of res judicata apply. Again, by extension, the preclusive effect of an adverse ruling by a value adjustment board does not depend on the reasons a property appraiser may have harbored in choosing not to appeal; the unappealed ruling controls and principles of res judicate apply.

4.

Crapo also points to an agricultural exemption statute, which addresses the unique problems associated with assessing agricultural lands. He notes that subsection 3(e) of that statute establishes a form of issue preclusion as to classification decisions by value adjustment boards:

> (e) Notwithstanding the provisions of paragraph (a) [which requires an annual classification of agricultural/non-agricultural lands], *land that has received an agricultural classification from the value adjustment board **or a court of competent jurisdiction** pursuant to this section is entitled to receive such classification in any subsequent year until such agricultural use of the land is abandoned or discontinued, the land is diverted to a nonagricultural use, or the land is reclassified as nonagricultural pursuant to subsection (4).*

§ 193.461(3)(e), Fla. Stat. (2019) (emphasis added). He argues that if the Legislature wanted to grant preclusive effect to a value

adjustment board's grant of an educational exemption, it could have enacted a statute similar to subsection 3(e).

Overlooked is that nothing in subsection 3(e) suggests a legislative intent to displace the well-established principle that res judicata applies to quasi-judicial bodies. *Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 108 (common law principles of preclusion apply absent legislative intent to the contrary). The default presumption, that finality and preclusion apply to quasi-judicial judgments, can be overcome only upon an express or implied legislative intent to the contrary. *Id.* at 110 (concluding that intent of federal age discrimination statute was to not give preclusive effect to judicially unreviewed state administrative findings in federal courts).

Rather than displacing or undermining preclusion principles, subsection 3(e) *complements* the common law preclusive effect of quasi-judicial decisions by making it *more difficult* to overcome a prior classification decision, requiring proof that an agricultural use was abandoned, discontinued, diverted, or reclassified due to changed circumstances. Subsection 3(e) does not jettison ordinary preclusion principles, it strengthens them as to agricultural exemptions, which are fraught with subjectivity. As explained in *Tilton v. Gardner*, subsection 3(e) constrains a property appraiser "to presume that land is still being used primarily for bona fide agricultural purposes and *must limit the inquiry to what may have changed.*" 52 So. 3d 771, 777-78 (Fla. 5th DCA 2010) (emphasis added).

> *If nothing has materially changed, then the property appraiser is powerless to deny an agricultural classification despite a belief that the current agricultural use is not bona fide.* On the other hand, if the land use has *materially changed*, then the property appraiser is free to consider the "bona fide" factors of section 193.461(3)(b) as they may relate to the changed condition in determining whether the agricultural use has been abandoned or discontinued. Thus, the trial court correctly asked: "*Since Plaintiffs' lands were classified agricultural in 2005 what changed?*"

44

*Id.* at 778 (emphasis added). By raising the evidentiary bar to overcome the presumption of correctness of a prior agricultural classification decision, subsection 3(e) supplements common law preclusion principles as they apply to quasi-judicial decisions; the legislature can supplement jurisdictional principles without displacing all others. Stated differently, the legislative purpose of giving heightened preclusive effect to prior agricultural classification decisions cannot logically eliminate the finality and preclusive effect of all other property tax decisions.

Moreover, Crapo ignores that subsection 3(e) includes within its ambit both value adjustment boards *and circuit court decisions*, i.e., "courts of competent jurisdiction." Crapo claims that subsection 3(e) is a limited legislative grant of preclusive effect for rulings on agricultural exemptions by value adjustment boards, whose other decisions lack precedential effect. By Crapo's logic, preclusive effect would be lacking as to *judicial* decisions of circuit courts in property tax matters, not just quasi-judicial ones. Why else would "courts of competent jurisdiction" be included? The reason is that subsection 3(e) supplements existing principles of res judicata by strengthening those applicable to agricultural exemptions; its language and purpose reinforce, rather than diminish, the Academy's position.

5.

Finally, the policy argument is made that taxes are different and that property appraisers must have plenary authority to ensure collection of tax revenues and protect public coffers; moreover, value adjustment boards are "unique" and subject to a "unique body of law" that is said to strip them of their quasi-judicial functions. This argument overlooks the overall balance the property tax statutes achieve. The legislature has accorded broad powers to property appraisers, but established an elaborate statewide system of sixty-seven quasi-judicial bodies whose sole purpose is to adjudicate property tax disputes in a fair, unbiased, and uniform manner with virtually every attribute of due process as well as the right to appeal adverse rulings. It is less than reassuring, therefore, to accept the proposition that property appraisers should have unchecked power to deny a previously granted tax exemption each and every year even though nothing's

45

changed that would alter a value adjustment board's (or circuit court's) ruling. Crapo contends that he can annually deny an exemption *for no reason*, merely hoping for a different outcome on identical facts/law, which embodies the definition of arbitrary action. *Agrico Chem. Co. v. State Dep't of Envtl. Regulation*, 365 So. 2d 759, 763 (Fla. 1st DCA 1978) ("An arbitrary decision is one not supported by facts or logic, or despotic."). Not to mention the expense of vexation litigation and the depletion of judicial (and quasi-judicial) resources of such a deny-exemption-every-year-though-nothing's-changed-hoping-for-different-outcome policy. Having failed to pursue available appellate relief in 2008, Crapo is precluded from undertaking duplicative and vexatious actions against the Academy absent changed circumstances, which he admits don't exist.

## *Conclusion*

Just as "a losing litigant deserves no rematch after a defeat fairly suffered" on an identical issue previously raised, a prevailing litigant deserves finality after a victory fairly achieved where nothing's changed. *Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 107. Res judicata principles require that the circuit court accord the Alachua County Value Adjustment Board's 2008 decision with preclusive effect, entitling the Academy to the educational exemption it has held for almost twenty-five years. Because the res judicata issue decides only this specific case, it is unnecessary and unwise to go further by overturning the education exemption, which will surely cause confusion and distress among the hundreds of educational institutions statewide who have justifiably relied on it. Far better to point out the exemption's shortcomings, leave it at that, and allow for a legislative fix, if deemed warranted.

\* \* \*

## *Postscript*

Judicial baby-splitting is a well-worn strategy for finding common ground in a contentious appellate case. But keep in mind that Solomon didn't actually cut the baby in two; his threat to do so exposed the true mother (i.e., the one who was willing to let the

child live though with the wrong mother). While Judge Osterhaus's attempt to split the baby is commendable, it exposes two truths.

First, his analysis necessarily recognizes that principles of finality and preclusion apply to value adjustment boards. Deciding that the "changed circumstances" exception to res judicata applies in this case means that finality and preclusion principles apply to value adjustment boards generally. To conclude otherwise would be like saying no judicial taking occurred without acknowledging a judicial takings theory. *Stop the Beach Renourishment, Inc. v. Florida Dept. of Envtl. Prot.*, 560 U.S. 702, 718 (2010) ("But embracing a standard while being coy about the right is, well, odd; and deciding this case while addressing *neither* the standard *nor* the right is quite impossible.").

Second, his analysis actually requires splitting the baby because it raises and adjudicates in the first instance on appeal a factually intense legal issue no party has raised during the entire course of this litigation: whether the "changed circumstances" exception applies. The reason it was never raised is that the parties *agreed* that nothing relevant had changed between the 2008 ruling and the 2014 ruling. Crapo repeatedly *admitted* that nothing factually or legally has changed: his counsel told the three-judge panel and the en banc court that nothing factually or legally had changed,[25] and that property appraisers can perpetually challenge value adjustment board rulings even if the facts and law are unchanged.[26] We heard this case en banc on the stipulated premise of no changed circumstances.

---

[25] Panel Oral Arg. at 2:55-3:00 (Feb. 12, 2018) (Crapo's counsel agreeing that "Factually nothing's changed.") & En Banc Oral Arg. at 18:36-19:00 (Apr. 10, 2019) (same except that Crapo seeks different legal interpretation).

[26] Panel Oral Arg. at 5:06-5:15.

Judge: Just to make clear, your position is that the property appraiser in whatever jurisdiction can come back year after year after year and challenge [the

47

As such, raising and adjudicating a fact-intense issue sua sponte on appeal that Crapo disavows, that was not addressed or factually developed below, and that has not been brought to the parties' attention comes across as appellate prestidigitation. Giving vitality to an unpreserved, undeveloped, and unbriefed issue is particularly unwise because the Academy has had no opportunity to address and rebut the issue; and, more importantly, the trial court never developed the facts that it might deem relevant for a "changed circumstances" exception (because Crapo did not claim them). Affirming on an unraised, unbriefed, unargued, factually undeveloped, and immaterial issue is not, in truth, a fitting way to decide a case of exceptional importance.

## APPENDIX

12D-9.001. Taxpayer Rights in Value Adjustment Board Proceedings.

(1) Taxpayers are granted specific rights by Florida law concerning value adjustment board procedures.
(2) These rights include:
(a) The right to be notified of the assessment of each taxable item of property in accordance with the notice provisions set out in Florida Statutes for notices of proposed property taxes;
(b) The right to request an informal conference with the property appraiser regarding the correctness of the assessment or to petition for administrative or judicial review of property assessments. An informal conference with the property appraiser is not a prerequisite to filing a petition for administrative review or an action for judicial review;
(c) The right to file a petition on a form provided by the county that is substantially the same as the form prescribed by the department or to file a petition on the form provided by the department for this purpose;

---

exemption] again and again and again even though nothing's changed.

Counsel: Hypothetically my answer to the question is yes. I don't know of any rule or law over the years that says no.

48

(d) The right to state on the petition the approximate time anticipated by the taxpayer to present and argue his or her petition before the board;

(e) The right to authorize another person to file a board petition on the taxpayer's property assessment;

(f) The right, regardless of whether the petitioner initiates the evidence exchange, to receive from the property appraiser a copy of the current property record card containing information relevant to the computation of the current assessment, with confidential information redacted. This includes the right to receive such property record card when the property appraiser receives the petition from the board clerk, at which time the property appraiser will either send the property record card to the petitioner or notify the petitioner how to obtain it online;

(g) The right to be sent prior notice of the date for the hearing of the taxpayer's petition by the value adjustment board and the right to the hearing within a reasonable time of the scheduled hearing;

(h) The right to reschedule a hearing a single time for good cause, as described in this chapter;

(i) The right to be notified of the date of certification of the county's tax rolls;

(j) The right to represent himself or herself or to be represented by another person who is authorized by the taxpayer to represent the taxpayer before the board;

(k) The right, in counties that use special magistrates, to a hearing conducted by a qualified special magistrate appointed and scheduled for hearings in a manner in which the board, board attorney, and board clerk do not consider any assessment reductions recommended by any special magistrate in the current year or in any previous year;

(l) The right to have evidence presented and considered at a public hearing or at a time when the petitioner has been given reasonable notice;

(m) The right to have witnesses sworn and to cross-examine the witnesses;

(n) The right to be issued a timely written decision within 20 calendar days of the last day the board is in session pursuant to Section 194.034, F.S., by the value adjustment board containing findings of fact and conclusions of law and reasons for upholding

or overturning the determination of the property appraiser or tax collector;

(o) The right to advertised notice of all board actions, including appropriate narrative and column descriptions, in brief and nontechnical language;

(p) The right to bring an action in circuit court to appeal a value adjustment board valuation decision or decision to disapprove a classification, exemption, portability assessment difference transfer, or to deny a tax deferral or to impose a tax penalty;

(q) The right to have federal tax information, ad valorem tax returns, social security numbers, all financial records produced by the taxpayer and other confidential taxpayer information, kept confidential; and,

(r) The right to limiting the property appraiser's access to a taxpayer's records to only those instances in which it is determined that such records are necessary to determine either the classification or the value of taxable non-homestead property.

_____

John C. Dent, Jr., and Jennifer A. McClain of Dent & McClain, Chartered, Sarasota, for Appellant/Cross-Appellee.

Paul A. Donnelly and Jung Yoon of Donnelly + Gross, Gainesville, for Appellee/Cross-Appellant.

Matthew H. Mears, General Counsel, and James L. Richmond, Assistant General Counsel, Tallahassee, for Amicus Curiae The Department of Education, Commission for Independent Education.

Ashley Moody, Attorney General, and Timothy E. Dennis, Chief Assistant Attorney General, Tallahassee, for Amicus Curiae State of Florida, Department of Revenue.

Benjamin K. Phipps of Phipps & Howell, Tallahassee; Michael D. Minton of Dean Mead Minton & Zwemer, Fort Pierce; Gerald J. Donnini of Moffa, Sutton & Donnini, P.A., Fort Lauderdale; and Mitchell I. Horowitz of Buchanan Ingersoll & Rooney PC, Tampa, for Amicus Curiae The Tax Section of the Florida Bar.

Loren E. Levy and Stuart W. Smith of The Levy Law Firm, Tallahassee, for Amicus Curiae The Property Appraisers' Association of Florida, Inc.